UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Asset Marketing Services, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JAM Products, Inc., d/b/a S&A Partners; and Steven Harris,<br><br>Defendants. | Case No. 19-cv-02113 (SRN/TNL)<br><br>**ORDER** |

Alyssa M. Troje, Jessica Sharpe, and Mark W. Vyvyan, Fredrikson & Byron, P.A., 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for Plaintiff.

Barbara P. Berens, Carrie L. Zochert, and Erin K. Fogarty Lisle, Berens & Miller, P.A., 80 South Eighth Street, Suite 3720, Minneapolis, MN 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiff Asset Marketing Services, LLC's ("AMS") oral motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). For the reasons below, the Court **GRANTS in part** and **DENIES in part** the motion.[1]

**I.     BACKGROUND**

In this case, AMS sought damages from Defendants JAM Products, Inc. and Steven Harris (collectively, "Defendants") arising from Defendants' delivery of certain Coca-Cola

---

[1] The Court ruled on AMS's motion from the bench, and advised the parties that it would issue a written order following the conclusion of the trial.

coins to AMS. AMS alleged that Defendants breached their contractual obligation to obtain authorization from Fiji conferring legal tender status on the coins prior to delivering them, and also that the importation of those coins constituted a violation of the Hobby Protection Act, 15 U.S.C. § 2101 *et seq.* (*See* Compl. [Doc. No. 1-1].) JAM Products filed multiple counterclaims, alleging that AMS breached its contractual obligation to pay JAM Products royalties; that AMS tortiously interfered with JAM Products' contract with Shanghai New Century Minting ("Shanghai Minting"); and that AMS breached its contractual obligation to reimburse JAM Products for two U.S. Customs duties assessed on the disputed coins. (*See* Am. Answer [Doc. No. 9].) The matter was tried to a jury on August 2, 2021, through August 6, 2021.

At the close of the Defendants' evidence, AMS moved for judgment as a matter of law on four grounds. First, AMS argued that no reasonable juror could find for Defendants on AMS's Hobby Protection Act claim. Second, AMS argued that JAM Products had not met its burden of proof on its tortious interference with contract counterclaim. Third, AMS argued that JAM Products had not carried its burden to prove that the customs duties were reasonable and necessarily incurred, as required to trigger AMS's contractual obligation to reimburse the fees. And finally, AMS argued that the evidence conclusively established a material breach of the contract by Defendants, extinguishing AMS's contractual duty to pay royalties to them.

## II.     ANALYSIS

### A.     Standard of Review

Federal Rule of Civil Procedure 50(a) provides that, "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," "the court may resolve the issue against the party . . . before the case is submitted to the jury." When considering such a motion, a court "must (1) resolve direct factual conflicts in favor of the nonmovant; (2) assume as true all facts supporting the nonmovant which the evidence tended to prove; (3) give the nonmovant the benefit of all reasonable inferences; and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn." *Roberson v. AFC Enters., Inc.*, 602 F.3d 931, 933 (8th Cir. 2010) (quoting *Larson ex rel. Larson v. Miller*, 76 F.3d 1446, 1452 (8th Cir. 1996) (en banc)).

However, because a court "may not accord a party the benefit of unreasonable inferences or those at war with the undisputed facts," and because a "reasonable inference" is only "one which may be drawn from the evidence without resort to speculation," a court may grant a party judgment as a matter of law ("JMOL"), and thereby remove an issue from the jury's province, if "the record contains no proof beyond speculation to support" a jury finding for the non-movant on that issue. *Sip-Top, Inc. v. Ekco Grp., Inc.*, 86 F.3d 827, 830 (8th Cir. 1996) (cleaned up) (affirming grant of pre-verdict JMOL); *accord SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*, 491 F.3d 350 (8th Cir. 2007) (same); *Arabian Agric. Servs. Co. v. Chief Indus., Inc.*, 309 F.3d 479 (8th Cir. 2002) (same); *Fought*

3

*v. Hayes Wheels Intern., Inc.*, 101 F.3d 1275 (8th Cir. 1996) (same); *see also Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1050 (8th Cir. 2000) (reversing a district court for failing to grant JMOL and noting that JMOL "*must* be granted when a non-movant's case rests solely upon speculation and conjecture lacking in probative evidentiary support" (emphasis added)).

### B. JAM Products' Tortious Interference with Contract Counterclaim

The Court begins with JAM Products' tortious interference with contract counterclaim. Under Minnesota law, to prevail on its counterclaim, JAM Products must show "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 664 (8th Cir. 2012) (quoting *Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 25 (Minn. 1982)). The Court finds that JAM Products failed to present any evidentiary support for this counterclaim beyond speculation and conjecture, for multiple reasons.

First, JAM Products failed to present evidence that AMS procured a breach of any contract by Shanghai Minting. On Day 4 of the trial, Mr. Harris testified that Defendants did not have an ongoing contract with Shanghai Minting, but rather entered into a new contract each time Defendants placed an order. Mr. Harris testified that, prior to AMS's alleged interference, Mr. Harris was able to work directly with Shanghai Minting. Then, AMS entered into a Commercial Cooperation Agreement with Shanghai Minting, which provided that AMS would act as a middleman between Shanghai Minting and its U.S. customers, and that AMS would conduct all of its minting in China through Shanghai

4

Minting. (Ex. D-50; *see also* Ex. D-51.) Mr. Harris testified that placing future orders through AMS increased the cost of striking coins with Shanghai Minting. But Mr. Harris unequivocally testified that Shanghai Minting never breached any of its contracts with JAM Products, and produced everything JAM Products ordered from them. Without a breach of contract by Shanghai Minting, AMS cannot be liable for tortious interference with contract. *See, e.g.*, *City Ctr. Commons, LLC v. DeSoto Assocs., LLC*, No. A16-1695, 2017 WL 1436093, at *3 (Minn. Ct. App. Apr. 24, 2017) ("Without a breach of contract, City Center is unable to establish the third element of tortious interference with a contractual relationship.").

Second, "the record contains no proof beyond speculation to support" a jury finding that AMS's conduct was not justified. *Sip-Top, Inc. v. Ekco Grp., Inc.*, 86 F.3d 827, 830 (8th Cir. 1996) (cleaned up). On Day 1 of the trial, William Gale testified that the decision by Shanghai Minting and AMS to exclusively deal with one another was prompted by personal relationships between the parties and was motivated by the agreement's financial advantages—not ill-will toward Mr. Harris. Nothing in the record—beyond speculation— contradicts Mr. Gale's description of Shanghai Minting's decision. In short, the record does not support the conclusion that Shanghai Minting's decision was caused by wrongful conduct by AMS.

Accordingly, the Court finds that a reasonable juror would not have a legally sufficient evidentiary basis to find for JAM Products on its tortious interference with contract counterclaim, and therefore grants AMS's motion with respect to that counterclaim.

### C. JAM Products' Breach of Contract Counterclaims

The Court next turns to JAM Products' breach of contract counterclaims. First, JAM Products alleged that AMS breached its contractual obligation to reimburse JAM Products for two U.S. Customs duties assessed on the disputed coins. Paragraph 4 of the parties' April 2016 Consulting Agreement provided:

> AMS agrees to reimburse reasonable expenses actually and necessarily incurred by Consultant in performing services under this Agreement . . . .

(Ex. P-1.) Thus, in order to trigger AMS's obligation to reimburse the duties, JAM Products must prove that the duties were "reasonable" and "necessarily incurred." But, on Day 4 of the trial, Mr. Harris testified unequivocally that no customs duty should have been assessed on those coins. Rather, the duty was imposed because Mr. Harris' broker misclassified the coins as kitchenware. Mr. Harris testified that, had the coins been classified as legal tender, the coins would not have been subject to any customs duty. Because the undisputed evidence shows that this fee should never have been imposed,[2] the Court finds that no reasonable juror could find that this fee was "reasonable" and "necessarily incurred," as required by paragraph 4 of the Consulting Agreement. Accordingly, the Court grants AMS's motion with respect to JAM Products' breach of contract counterclaim regarding the customs duties.

---

[2] Indeed, Mr. Harris testified that one of the duties was reversed shortly after it was assessed, and that JAM Products has obtained a judgment against FedEx for a refund of the second customs duty.

Second, JAM Products alleged that AMS breached its contractual obligation to pay royalties on the Coca-Cola coins it sold. AMS moved for judgment as a matter of law on this counterclaim, arguing that the evidence conclusively establishes that AMS's duty to pay royalties was excused by JAM Products' material breach of contract. Under Minnesota law, a material breach of contract by one party may discharge the aggrieved party's obligation to perform under the contract. *E.g.*, *Sitek v. Striker*, 764 N.W.2d 585, 593 (Minn. Ct. App. 2009). Importantly, however, AMS did not move for a judgment as a matter of law that Defendants breached the contract. The materiality question presupposes a breach of contract. Moreover, whether a breach of contract is sufficiently significant to constitute a material breach excusing the non-breaching party's failure to perform is a fact question. *Id.* The Court finds that the record, viewed in the light most favorable to JAM Products, would permit a reasonable juror to conclude that JAM Products' breach was not material. *See Roberson v. AFC Enters., Inc.*, 602 F.3d 931, 933 (8th Cir. 2010). Accordingly, the Court denies AMS's motion with respect to JAM Products' counterclaim regarding AMS's duty to pay royalties.

### D. AMS's Hobby Protection Act Claim

The Court next considers AMS's Hobby Protection Act claim. The Act prohibits "the importation into the United States, for introduction into or distribution in commerce, or the sale in commerce of any imitation numismatic item which is not plainly and permanently marked 'copy.'" 15 U.S.C. § 2101(b). It is undisputed that Defendants imported the disputed Coca-Cola coins into the United States for introduction, distribution, or sale in commerce. It is also undisputed that the coins were not "plainly and permanently

marked" as "copies." Defendants' liability under the Act therefore hinges on whether the coins, at the time they were imported, were "imitation numismatic items."

An "imitation numismatic item" is "an item which purports to be, but in fact is not, an original numismatic item." 15 U.S.C. § 2106(4). An "original numismatic item" is "anything which has been a part of a coinage or issue which has been used in exchange or has been used to commemorate a person or event." 15 U.S.C. § 2106(3). In this case, the disputed Coca-Cola coins purported to be legal tender authorized by the country of Fiji. The coins bear Fiji's coat of arms and markings indicating their denominations, and all parties testified that the coins were meant to be legal tender in Fiji. The coins therefore "purport[ed] to be" "part of a coinage or issue" authorized by Fiji. If, in fact, they were not authorized by Fiji at the time of their importation, the coins were "imitation numismatic items." *See* 15 U.S.C. § 2106(3)–(4).

Viewing the evidence presented at trial in the light most favorable to Defendants, and drawing all *reasonable* inference in their favor, the Court concludes that no reasonable juror could find that the coins were authorized as legal tender by Fiji at the time of their importation. It is true that, on the face of this record, there is some factual dispute concerning whether the coins were authorized. There are November 1, 2017 and January 24, 2018 letters from South Pacific Mint—formerly an authorized representative of Fiji—that purport to grant legal tender status to the disputed coins. (Ex. D-21.) In addition, there is a June 18, 2019 letter from the Reserve Bank of Fiji describing the "alleged" failure to gain proper approval of the coins. (Ex. P-61.)

But the vast weight of the evidence demonstrates that the coins were not authorized as legal tender by Fiji at the time they were imported into the United States. On Day 4 of the trial, Mr. Harris himself testified, unequivocally, that the coins were not legal tender at that time. In addition, Fiji later charged Mr. Harris for authorization of the coins—despite the fact that he had already paid South Pacific Mint for the authorization—which belies the claim that South Pacific Mint had successfully obtained such authorization. In the face of the Mr. Harris' own admissions, no reasonable juror could find that the coins were legal tender at the time they were imported, despite some conflicts in the documentary evidence. On this record, to find otherwise would require the jury to resort to speculation regarding the interactions between Fiji and South Pacific Mint. Because "the record contains no proof beyond speculation to support" the proposition that the coins were in fact authorized by Fiji, judgment as a matter of law on AMS's Hobby Protection Act claim is appropriate. *Sip-Top, Inc. v. Ekco Grp., Inc.*, 86 F.3d 827, 830 (8th Cir. 1996) (cleaned up); *see also Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1050 (8th Cir. 2000) (reversing a district court for failing to grant JMOL and noting that JMOL "*must* be granted when a non-movant's case rests solely upon speculation and conjecture lacking in probative evidentiary support" (emphasis added)).

Accordingly, the Court grants AMS's motion with respect to Defendants' liability under the Hobby Protection Act.

### E. The Parties' Contractual Duties

Finally, the parties disputed whether Defendants had a contractual obligation to obtain authorization from Fiji conferring legal tender status on the disputed coins prior to

delivering the coins to AMS. Defendants argued that the parties' April 2016 Consulting Agreement and Amendment 1 to that Agreement did not impose such an obligation. (Ex. P-1.) Defendants also disputed whether the Agreement was amended by two March 2018 emails (Exs. P-9, P-11), and argued that even if the emails amended the Agreement, those emails did not impose a contractual duty on Defendants to obtain issuing authority approval for the coins.

Under Minnesota law, interpreting a contract to ascertain the parties' obligations is the role of the Court, not the jury. *Alpha Real Est. Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 311 (Minn. 2003). The Court concludes that it need not reach the issue of whether the two March 2018 emails supplemented or modified the Consulting Agreement, because the Consulting Agreement itself imposed an obligation on Defendants to secure legal tender status from Fiji prior to delivering the disputed coins to AMS.

Amendment 1 to the Consulting Agreement provided: "Consultant represents and warrants that, with respect to any proposed licensed JAM Products, Consultant has obtained all required third party and/or licensor consents." (Ex. P-1.) There is no dispute that the Coca-Cola coins were a "proposed licensed JAM Product." Therefore, the question is whether the language "all required third party **and/or** licensor consents" encompassed approval from an issuing authority. Defendants argued that their only contractual obligation under this provision was to obtain approval from a brand licensor—here, Coca-Cola. But the contract refers to "third parties," both in addition to and as an alternative to "licensors." Thus, to read the contract to merely require consent from licensors like Coca-Cola would render the "third parties" language superfluous. *Cf. Chergosky v. Crosstown*

*Bell, Inc.*, 463 N.W.2d 522, 526 (Minn. 1990) ("Because of the presumption that the parties intended the language used to have effect, we will attempt to avoid an interpretation of the contract that would render a provision meaningless."). Thus, "third parties" cannot be limited to licensors.

In the Court's view, the contract language is at best ambiguous. Where a contract is ambiguous, the Court may consider contemporaneous parol evidence to help interpret the contract. *Gutierrez v. Red River Distrib., Inc.*, 523 N.W.2d 907, 908 (Minn. 1994). In this case, the parol evidence is undisputed, and confirms that all the parties to the contract understood that Defendants had a contractual obligation to obtain issuing authority approval prior to delivering the coins. On Day 1 and Day 2 of the trial, both of AMS's representatives—Mr. Gale and Andrew Salzburg—testified that obtaining issuing authority approval was Mr. Harris' job, and that Mr. Harris had never indicated the obligation rested on anyone other than himself. On Day 4, Mr. Harris himself testified that he was required to deliver coins with legal tender status. And all of Mr. Harris' subsequent actions in attempting to obtain such approval further demonstrate that the contract imposed an obligation on him to do so. (*See* Exs. P-10, P-12–P-17 (reflecting Mr. Harris' efforts to obtain issuing authority approval, and AMS's expectation that he would do so prior to delivering the coins).) Finally, on Day 3 of the trial, Mr. Harris explained that there are two steps in obtaining approval prior to striking coins like those at issue in this case: obtaining consent from the licensor—here, Coca-Cola—and obtaining approval from the issuing authority granting the coins legal tender status.

In light of this testimony, the Court construes the contract's reference to "third party and/or licensor consents" to refer to approval from licensors and any necessary issuing authority.

### III. CONCLUSION

For the foregoing reasons, and based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's oral Motion for Judgment as a Matter of Law is **GRANTED in part** and **DENIED in part**, as follows:

1. The motion is **GRANTED** with respect to Defendants' liability under the Hobby Protection Act, and with respect to JAM Products' counterclaims for tortious interference with contract and for breach of Plaintiff's contractual obligation to reimburse JAM Products for U.S. Customs duties assessed on the disputed coins; and

2. The motion is **DENIED** with respect to JAM Products' breach of contract counterclaim regarding AMS's duty to pay royalties to JAM Products.

**IT IS SO ORDERED.**

Dated: August 10, 2021

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge