## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Asset Marketing Services, LLC, | Case No. 19-cv-02113 (SRN/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| JAM Products, Inc., d/b/a S&A Partners; and Steven Harris, | |
| Defendants. | |

Alyssa M. Troje, Jessica Sharpe, and Mark W. Vyvyan, Fredrikson & Byron, P.A., 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for Plaintiff.

Barbara P. Berens and Carrie L. Zochert, Berens & Miller, P.A., 80 South Eighth Street, Suite 3720, Minneapolis, MN 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiff's Motion for Attorneys' Fees and Costs [Doc. No. 102] and Defendants' Motion for Judgment as a Matter of Law or in the Alternative, a New Trial [Doc. No. 108].  Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court denies both motions.

## I.     BACKGROUND

Plaintiff Asset Marketing, Services, LLC. ("AMS") filed this lawsuit involving collectible coins against Defendants JAM Products, Inc., d/b/a S&A Partners, and Steven Harris.  Plaintiff asserted claims under the Hobby Protection Act ("HPA"), 15 U.S.C. § 2101 *et seq*., as well as common law claims for breach of contract and unjust enrichment.

1

(Compl. [Doc. No. 1-1].)  Defendants denied the allegations, and asserted counterclaims against Plaintiff for tortious interference with contract and breach of contract.  (Defs.' Answer & Countercl. [Doc. No. 7].)

Prior to trial, the parties filed motions in limine on several issues.  The Court ruled on the portions of the motions at issue here as follows:  (1) the HPA creates a private right of action for merchants like Plaintiff AMS, and its protections are not limited to coin collectors, hobbyists, and other unsophisticated consumers; and (2) intent and knowledge are not relevant to liability under the HPA or for breach of contract.  (*See* July 16, 2021 Orders [Doc. Nos. 81, 82].)

The Court presided over a jury trial in this matter between August 2–6, 2021.  At the close of Defendants' case, the parties moved for judgment as a matter of law.  (Aug. 5, 2021 Minutes [Doc. No. 91].)  The Court denied Defendants' motion and granted Plaintiff's motion on the question of Defendants' liability under the HPA.[1]  (Aug. 10, 2021 Order [Doc. No. 98] at 7–9.)  The Court therefore instructed the jury that "[t]he Court has found that JAM Products and Harris violated the [HPA]."  (Jury Instr. No. 7 [Doc. No. 97].)  The jury returned a verdict in Plaintiff's favor on its breach of contract claim, and awarded it all of its requested damages, totaling $140,464.25, and declined to award any

---

[1]     The Court also granted Plaintiff's motion for judgment as a matter of law on Defendants' counterclaims for tortious interference with contract and breach of contract to the extent Defendants' counterclaim sought to recover duty charges that Defendants had incurred.  (Aug. 10, 2021 Order [Doc. No. 98] at 4–5.)

damages to Defendants on its counterclaim for breach of contract. (Redacted Jury Verdict [Doc. No. 95] at 1–2.)

Currently before the Court are the parties' post-trial motions. Defendants renew their motion for judgment as a matter of law, or, in the alternative, they move for a new trial. In support of their renewed motion for judgment as a matter of law, they first argue that the evidence at trial showed that the coins in question were "original numismatic items," and not "imitation numismatic items," in violation of the HPA. (Defs.' Mem. [Doc. No. 110] at 4.). In addition, Defendants contend that they could not have violated the HPA because they lacked the necessary knowledge and intent. (*Id.* at 5.) Accordingly, they request that the Court vacate judgment for Plaintiff on the HPA and breach of contract claims, and enter judgment in Defendants' favor. (*Id.*)

In the alternative, Defendants move for a new trial on the following grounds: (1) the Court erred in granting judgment as a matter of law on Plaintiff's HPA claim; (2) the Court erred in determining that intent and knowledge are not elements of a claim under the HPA; (3) the jury's verdict is not supported by the evidence; and (4) the Court made several incorrect evidentiary rulings. (*Id.* at 6–14.)

Plaintiff opposes Defendants' Motion for Judgment as a Matter of Law, arguing that the HPA requires proper authorization of coins as legal tender at the time of importation into the United States, and the evidence supports a finding that Defendants violated the HPA and the parties' contract by importing numismatic items into the United States without such authorization and without clearly marking them as "COPY." (Pl.'s Opp'n [Doc. No. 114] at 4.) Likewise, Plaintiff opposes Defendants' alternative request for a

new trial, arguing that the Court properly found intent was not relevant to HPA claims, properly granted judgment as a matter of law on Plaintiff's HPA claim, the jury's verdict was supported by the evidence, and the Court's evidentiary rulings were proper. (*Id*. at 5–10.)

In its motion, Plaintiff moves for attorneys' fees and costs in the amount of $328,203.95, pursuant to 15 U.S.C. § 2102. (Pl.'s Mot./Mem. [Doc. No. 102] at 15.) Defendants oppose Plaintiff's motion on several bases, including that, in its discretion, the Court should decline to award fees and costs under the circumstances, that the fee request is disproportionate to Plaintiff's recovery, and that it is unreasonable and excessive. (Defs.' Opp'n [Doc. No. 112] at 1.)

## II.   DISCUSSION

### A. Defendants' Motion for Judgment as Matter of Law or for a New Trial

As noted, Defendants renew their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), or, alternatively, move for a new trial under Rule 59(a)(1)(A).

#### 1.   Judgment as a Matter of Law

##### a.   Standard of Review

Federal Rule of Civil Procedure 50(b) provides that a party may renew a motion for judgment as a matter of law within 28 days after entry of judgment, and may also include an alternative request for a new trial under Rule 59. A renewed motion for judgment as a matter of law may be granted only if "a reasonable jury would not have a legally sufficient evidentiary basis" to return the verdict that it reached. *Bavlsik v. Gen. Motors, LLC*, 870

F.3d 800, 805 (8th Cir. 2017) (citing Fed. R. Civ. P. 50(a)(1)).  The law imposes a high standard on a party seeking to interfere with a jury verdict.  *Id.*  The factors applicable to such a motion "reflect[] [courts'] hesitancy to interfere with a jury verdict," and therefore require a trial court to:  "(1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved.  That done, the court  must then deny the motion if reasonable persons could differ as to the conclusions to be drawn from the evidence."  *Id.* (citations omitted).

### b.  Proper Authorization as Legal Tender at Time of Importation

The HPA prohibits "the importation into the United States, for introduction into or distribution in commerce, or the sale in commerce of any imitation numismatic item which is not plainly and permanently marked 'copy.'" 15 U.S.C. § 2101(b).  Defendants do not dispute that they imported the coins in question into the United States for their introduction, distribution, or sale in commerce, and they do not dispute that the coins were not "plainly and permanently marked" as "copies."

At trial, Defendants' liability under the HPA therefore hinged on whether the coins, at the time they were imported, were "imitation numismatic items."  An "imitation numismatic item" is "an item which purports to be, but in fact is not, an original numismatic item." 15 U.S.C. § 2106(4).  The coins here "purport[ed] to be" "part of a coinage or issue"

5

authorized by Fiji. However, if they were not authorized by Fiji at the time of their importation, the coins were "imitation numismatic items." *See* 15 U.S.C. § 2106(3)–(4).

Defendants argue that because a June 2019 letter from the Bank of Fiji, Trial Ex. P-61, allegedly providing retroactive authorization for the coins at issue, states that the coins were approved the moment they were struck, Defendants could not have violated the HPA. (Defs.' Mem. at 13.) Indeed, the Court acknowledged this exhibit, along with other evidence, in its ruling granting judgment as a matter of law to Plaintiff on liability for its HPA claim. (Aug. 10, 2021 Order at 8.) But the Court also observed that the Defendant, Mr. Harris himself, testified at trial, unequivocally, that the coins were not legal tender at the time of importation. (*Id.*) Moreover, Fiji later charged Mr. Harris for authorization of the coins, belying Defendants' claim that South Pacific Mint had successfully obtained such authorization. (*Id.*)

Moreover as Plaintiff notes, it is undisputed that the coins were imported during the spring and summer of 2018—nearly a year before they received approval retrospectively. The letter also refers to Trial Exhibit P-56, the February 25, 2019 Tower Mint Report, which found, to the contrary, that the coins were not properly authorized at the time of importation.

Applying the Rule 50(b) standard of review to the record here, which, among other things, requires the Court to assume that all conflicts in the evidence were resolved in favor of the prevailing party, the Court and the jury properly found that Defendants violated the HPA and the parties' contract by importing imitation numismatic items into the United States without plainly marking the coins as COPY. 15 U.S.C. §§ 2101-2106. Accordingly,

6

the Court denies the portion of Defendants' motion in which it renews its request for judgment as a matter of law on this basis.

### c.  Relevance of Intent and Knowledge to a Claim Under the HPA

During trial, the Court also granted Plaintiff's Motion in Limine to exclude as irrelevant any evidence that Defendants lacked knowledge that the coins were unauthorized at the time of importation or that Defendants had no intent to deceive or to violate the HPA. Defendants argue that this ruling was in error, and seek judgment as a matter of law on this basis.  (Defs.' Mem. at 5.)

Again, the language of the statute makes clear that proof for an HPA claim merely requires a plaintiff to show that the defendant manufactured in the United States, or imported into the United States, for introduction into or distribution in commerce, any imitation numismatic item which is not plainly or permanently marked "COPY." 15 U.S.C. §§ 2101-2106.   Under the plain language of the statute, intent or knowledge are not elements of a claim.  Rather, the statute imposes a form of strict liability, without regard to a violator's intent or knowledge.  As the Federal Trade Commission explained in an administrative decision arising under the HPA, *In the Matter of Gold Bullion Int'l*, 92 F.T.C. 196 (F.T.C. Feb. 13, 1978), "Congress has concluded that copies of original numismatic items which are not marked as such are inherently deceptive, and my conclusion that this record fails clearly to show deception is unimportant, for that is not a necessary element of proof under the Hobby Protection Act."

Because there is no basis for the Court to reverse its prior ruling, the Court denies the portion of Defendants' motion seeking judgment as a matter of law on this issue.

### 2. Motion for a New Trial

Alternatively, Defendants request a new trial under Rule 59, which permits a party to move for such relief following a jury trial. Fed. R. Civ. P. 59(a)(1)(A).

### a. Standard of Review

The district court has discretion to grant or deny a new trial, but may only disturb a jury verdict if the first trial "resulted in a miscarriage of justice, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial." *Trickey v. Kaman Indus. Tech. Corp.*, 705 F.3d 788, 807 (8th Cir. 2013) (citation omitted). A "miscarriage of justice" occurs only when the movant demonstrates prejudicial error, not mere inaccuracies or errors at trial. *Id*. Courts consider errors in evidentiary rulings to be prejudicial only when the error likely affected the jury's verdict. *Id*. Where the movant contends the verdict is against the weight of the evidence, it must be against the "clear weight," "overwhelming weight," or "great weight" of the evidence in order to grant a new trial. *Beckman v. Mayo Found.*, 804 F.2d 435, 439 (8th Cir. 1986).

### b. HPA Claim

The Court's earlier discussion regarding the irrelevance of intent and knowledge to an HPA claim applies equally to Defendants' request for a new trial on the same grounds. Under the plain language of the statute, intent and knowledge are not elements of a claim against a primary violator of the HPA. Defendants point to a regulation that purportedly supports their position, (Defs.' Mem. at 7), but the regulatory language in question applies to defendants accused of substantially assisting primary violators. *See* 16 C.F.R. § 304.3 ("It shall be a violation of the Act and the regulations promulgated thereunder for a person

8

to provide substantial assistance or support to any manufacturer, importer, or seller of imitation numismatic items, . . . if that person knows or should have known that the manufacturer, importer, or seller is engaged in any practice that violates the Act and the regulations promulgated thereunder.")  Defendants here were primary violators, i.e., the importers and manufacturers of imitation numismatic items liable under 15 U.S.C. §§ 2101-2106.  No such "knew or should have known language" is found in any regulatory language applicable to them.  Accordingly, the Court denies Defendants' motion for a new trial on this basis.

To the extent that Defendants move for a new trial on the grounds that the Court improperly applied the HPA to protect "sophisticated commercial coin dealers like AMS" as opposed to amateur hobbyists, (Defs.' Mem. at 2), the Court denies Defendants' motion. The Court reaffirms its July 16, 2021 ruling in which it found that the HPA permits sophisticated entities like Plaintiff to seek relief under the statute, and rejects Defendants' narrow construction of the word "person" found in 15 U.S.C. § 2102(a).  (July 16, 2021 Order [Doc. No. 81] at 2–3.)  As the Court previously explained, Defendants' substantial limitation on the word "person" is not supported by the plain language of the HPA, is contrary to the Federal Trade Commission's regulations, and runs afoul of the liberal construction owed to the HPA as a consumer protection statute.  (*Id*.) (citing *DeMarco v. Nat'l Collector's Mint, Inc.*, 229 F.R.D. 73, 77 (S.D.N.Y. 2005)).

### c. Application of Proper Legal Standard for Judgment as a Matter of Law

Defendants also argue that they are entitled to a new trial because the Court applied the incorrect legal standard in granting Plaintiff judgment as a matter of law on the question of Defendants' liability under the HPA. (Defs.' Mem. at 9–12.) They argue that the Court improperly weighed the evidence by first noting the existence of a factual dispute concerning whether the coins were authorized, and then determining that the vast weight of the evidence demonstrated that the coins were not authorized. (*Id*. at 10) (citing Aug. 10, 2021 Order at 9.) The Court disagrees with Defendants' legal argument and its characterization of the Court's ruling.

As the Court previously explained in its August 10 order, Rule 50 provides that judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." (Aug. 10, 2021 Order at 3) (citing Fed. R. Civ. P. 50(b)(1)). The Eighth Circuit has noted that the inquiry for both Rule 56 summary judgment motions and Rule 50 motions for judgment as a matter of law is the same: "Whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Axelson v. Watson*, 999 F.3d 541, 546 (8th Cir. 2021).

Because a court "may not accord a party the benefit of unreasonable inferences or those at war with the undisputed facts," and because a "reasonable inference" is only "one which may be drawn from the evidence without resort to speculation," a court may grant a

party judgment as a matter of law ("JMOL"), and thereby remove an issue from the jury's province, if "the record contains no proof beyond speculation to support" a jury finding for the non-movant on that issue. *Sip-Top, Inc. v. Ekco Grp., Inc.*, 86 F.3d 827, 830 (8th Cir. 1996) (cleaned up) (affirming grant of pre-verdict JMOL); *accord SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*, 491 F.3d 350 (8th Cir. 2007) (same); *Arabian Agric. Servs. Co. v. Chief Indus., Inc.*, 309 F.3d 479 (8th Cir. 2002) (same); *Fought v. Hayes Wheels Int'l., Inc.*, 101 F.3d 1275 (8th Cir. 1996) (same); *see also Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1050 (8th Cir. 2000) (reversing a district court for failing to grant JMOL).

While Defendants contend that "the only evidence that the coins were not approved was the Tower Mint Report and an email from Dawson claiming that someone from Fiji had told him that the coins had not been approved," (Defs.' Mem. at 11), the Court disagrees. As the Court noted in its ruling, the Defendant, Mr. Harris, conceded that the coins were not authorized at the time of importation. (Aug. 10, 2021 Order at 9.) Although Defendants now argue that this testimony was merely Mr. Harris's "hindsight conclusion," (Defs.' Mem. at 11), Plaintiff correctly observes that Mr. Harris also admitted to the following facts: (1) he was unable to reach South Pacific Mint after the winter of 2018; (2) in March 2018, he contacted Tower Mint to correct the problem; (3) he knew the South Pacific Mint letters were not proof of authorization from an issuing authority; (4) he imported the coins in April 2018 without knowing if the issue had been resolved; (5) he sent Plaintiff the redacted October 30, 2018 Tower Mint Letter because he knew that the South Pacific Mint letters were not proof of authorization; and (6) he knew the coins were

not authorized until Fiji was paid, which did not happen until July 2019. (Pl.'s Opp'n at 8.) Mr. Dawson's testimony and many other exhibits corroborated Mr. Harris' admissions. (*Id.*)

Based on this record, which included some conflicting documentary evidence as to whether the coins were authorized, as the Court acknowledged, (Aug. 10, 2021 Order at 8), the Court reaffirms its ruling that no reasonable juror could have found that the coins were legal tender at the time they were imported. On this record, to find otherwise would have required the jury to resort to speculation regarding the interactions between Fiji and South Pacific Mint. Because "the record contain[ed] no proof beyond speculation to support" the proposition that the coins were in fact authorized by Fiji, judgment as a matter of law on AMS's Hobby Protection Act claim was appropriate. *Sip-Top, Inc.*, 86 F.3d at 830; *see also Concord Boat Corp.*, 207 F.3d at 1050 (reversing a district court for failing to grant JMOL and noting that JMOL "*must* be granted when a non-movant's case rests solely upon speculation and conjecture lacking in probative evidentiary support" (emphasis added)).

### d. Jury's Verdict Supported by the Evidence

Defendants also contend that a new trial should be granted because the jury's verdict is not supported by the evidence. (Defs.' Mem. at 14.) In particular, they argue that the only evidence that came directly from Fiji was the June 2019 letter, and because other testimony was "secondhand," the jury improperly determined that Defendants breached the contract and violated the HPA. (*Id.*) Further, Defendants maintain that the evidence fails to support the jury's damages award. They contend that they were entitled to commissions

under the clear wording of the Consulting Agreement, although the jury rejected such damages based on its "erroneous breach of contract determination coupled with the Court's improper construction of the relevant contract law." (*Id.*) In addition, Defendants argue that the jury improperly awarded damages to Plaintiff for the monthly retainer amounts paid to JAM Products under the Consulting Agreement between January and April 2018. (*Id.*) They contend that the contract provides for the payment of fees in exchange for Mr. Harris providing certain services with 50% of his professional time, and there was no evidence showing that he failed to perform those services. (*Id.*)

As previously noted, where the movant contends the verdict is against the weight of the evidence, it must be against the "clear weight," "overwhelming weight," or "great weight" of the evidence in order to grant a new trial. *Beckman*, 804 F.2d at 439. Defendants do not meet this standard. The jury instructions properly stated that the law makes no distinction between the weight to be given to direct and circumstantial evidence. (Jury Instr. No. 2.) And as the Court observed earlier, the record contained ample evidence that the coins were not authorized—including the admissions of Mr. Harris. The jury's award of damages flowing from that conduct was supported by the evidence at trial. The Court rejects Defendants' arguments to the contrary, as well as their argument that they were entitled to damages.

With respect to the portion of damages the jury awarded Plaintiff based on language in the Consulting Agreement for four monthly retainer payments between January and April 2018, Plaintiff paid Defendants $20,000 per month to manufacture and ship to AMS legal tender coins approved by Fiji. (Trial Ex. P-1.) The evidence at trial showed that

Defendants did not do so, and the coins that Defendants delivered were not legal tender. The Court finds no error in the jury's award of damages for the monthly retainer payments.

Accordingly, the Court finds that sufficient evidence supported the jury's verdict.

### e. Evidentiary Rulings

Finally, Defendants move for a new trial based on four of the Court's evidentiary rulings. In order to obtain a new trial based on an error in an evidentiary ruling, the error must have been so prejudicial that it likely affected the jury's verdict. *Trickey*, 705 F.3d at 807.

First, Defendants argue that the Court erred in "[e]xcluding Plaintiff's admission, via Bill Gale, that it too had violated the HPA." (Defs.' Mem. at 15.) But Defendants did not assert a claim that Plaintiff had violated the HPA. Accordingly, the Court properly excluded Mr. Gale's testimony as irrelevant under Federal Rule of Evidence 401.

Second, Defendants assert that the Court erred in "[e]xcluding testimony from Steve Harris and Andrew Salzberg regarding Trial Exhibit D-31, wherein Plaintiff[] improperly claimed a copyright to the Coca-Cola coins at issue, which then led to Defendants' distrust of AMS after that occurrence." (*Id.*) Because there was no copyright counterclaim asserted against Plaintiff, the Court properly excluded any testimony or evidence regarding this issue as irrelevant under Federal Rule of Evidence 401.

Third, Defendants argue that the Court permitted the admission of testimony and legal invoices that were produced during trial, to Defendants' detriment. (*Id.*) They further contend that Plaintiff failed to establish any relevant connection between the legal work performed and its alleged damages. (*Id.*) Plaintiff states that it produced the legal invoices

in the spring of 2020, and because of Defendants' objections, it removed redactions at trial and also lowered its requested amount.  (Pl.'s Opp'n at 10.)  The Court finds that the legal invoices and related testimony were properly admitted, and Defendants suffered no prejudice.

Fourth, Defendants similarly contend that the Court permitted the admission of testimony and late-produced evidence regarding Plaintiff's alleged holding cost for the coins at issue, which was prejudicial to Defendants.  (Defs.' Mem. at 15.)  They argue that this ruling was particularly prejudicial because Plaintiff had previously designated Andrew Salzberg to testimony, not Natalie Mehrhoff, and Mr. Salzberg had insufficient knowledge regarding the damages calculation and did not identify any documents in support of the calculation.  (*Id*.)  But Plaintiff states that it identified its damages for holding costs in the summer of 2020.  (Pl.'s Opp'n at 10.)  In addition, Plaintiff's witness list disclosed Ms. Mehrhoff as a witness (Pl.'s Witness List [Doc. No. 45] at 1; Pl.'s Am. Witness List [Doc. No. 83] at 1), and she testified regarding damages with a demonstrative exhibit. Defendants had a full opportunity to cross-examine her at trial.  And, as Plaintiff notes, her testimony actually lowered the amount that Plaintiff had previously sought for holding-cost damages.  (Pl.'s Opp'n at 10.)  The Court properly admitted her testimony and related exhibits, and Defendants were not prejudiced by this ruling.

In sum, the Court disputes that these rulings were made in error, but even if they were, they were not prejudicial.

Accordingly, the Court finds that none of Defendants' arguments provides a sufficient basis for a new trial under Rule 59(a)(1)(A).  This motion is therefore denied.

## B. Plaintiff's Motion for Attorneys' Fees and Costs

As noted earlier, Plaintiff moves for an award of attorneys' fees and costs in the amount of $328,203.95. It relies on a provision of the HPA that permits a district court to award a prevailing plaintiff reasonable attorneys' fees and costs, in the Court's discretion. (Pl.'s Mot./Mem. at 1) (citing 15 U.S.C. § 2102). In addition, in a footnote, Plaintiff also contends that it is entitled to attorneys' fees under the terms of the parties' contract. (*Id*. at 1–2, n.1.)

Defendants oppose the motion on several grounds: (1) a discretionary award is inappropriate here where there is no evidence that Defendants acted with bad intent; (2) the request is unreasonably disproportionate to the damages award; (3) the request improperly includes fees incurred on Plaintiff's breach of contract claim, for which there is no fee-shifting provision; (4) the requested amount of fees and costs is excessive. (Defs.' Opp'n at 2–17].)

While the Court "may" award a prevailing plaintiff reasonable attorneys' fees and costs under the HPA, such an award is not mandatory. *See* 15 U.S.C. § 2102 ("In any such action [for violations under 15 U.S.C. § 2101(a), (b), or (c)], the court may award the costs of the suit, including reasonable attorneys' fees."). The Court is unaware of any legal authority addressing the particular factors that courts are to consider when evaluating fee requests under the HPA, nor do the parties cite any such authority. In a wide variety of legal contexts, courts consider numerous factors when determining a reasonable fee award, including the degree of a plaintiff's success, the time and labor required for the case, the novelty or difficulty of the issues, the attorney's requisite skill, the attorney's inability to

perform other work because of the case, and the experience and reputation of counsel.  *See Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983); *see also Milner v. Farmers Inc. Exch.*, 748 N.W.2d 608, 622 (Minn. 2008) (enumerating similar factors).[2]

Respectfully, the Court finds that an award of attorneys' fees and costs would be inappropriate here.  Indeed, Plaintiff's counsel skillfully and successfully advocated for Plaintiff.  However, the Court disagrees with Plaintiff that Defendants' conduct justifies an award of attorneys' fees and costs.  Plaintiff relies on *Trude v. Glenwood State Bank*, No. A17-0229, 2017 WL 5560292, at *1–3 (Minn. Ct. App. Nov. 20, 2017), in support of its position that large fee awards are proper when a party engages in conduct that increases the costs of litigation.  (Pl.'s Mot./Mem. at 12.)  But the defendants in *Trude* were found to have "conspired with the other respondents to avoid satisfaction of . . . [the] original judgment" and they had engaged in a "pattern of fraud, civil conspiracy, and fraudulent transfers that exacerbated [judgment creditors'] collection efforts."  2017 WL 5560292, at *1–3.  No such facts exist here.  Instead, Plaintiff asserts that Defendants refused to engage in settlement discussions and that Mr. Harris unnecessarily prolonged the litigation by changing his testimony.  Neither of these circumstances warrants a fee award.  A defendant may decline to mediate a dispute, putting a plaintiff to its burden of proof, and witness

---

[2]     Awards of discretionary attorneys' fees under other statutory schemes involving consumer or employee protections involve the consideration of similar factors.   For example, under ERISA, factors that courts consider include the following:  (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy a fee award; (3) whether a fee award would deter other persons acting under similar circumstances; and (4) the relative merits of the parties' positions.  *Lawrence v. Westerhaus*, 749 F.2d 494, 496 (8th Cir. 1984).

testimony may change over time.  Such conduct here does not support a finding of bad-faith litigation tactics, aimed at increasing the costs of litigation to the opposing party.  Nor does the Court find that this was an unusually time-intensive case involving novel issues, or that Plaintiff's counsel was unable to perform other work throughout this litigation.  *See Hensley*, 461 U.S. at 430 n.3.  Accordingly, the Court respectfully declines to award attorneys' fees and costs to Plaintiff under the HPA.

Finally, while Plaintiff contends that it is also entitled to reimbursement of its attorneys' fees and costs pursuant to the language of the parties' contract, (Pl.'s Mot./Mem. at 1–2, n.1), the Court disagrees.  The language in question provides:

> Consultant hereby agrees that Consultant shall indemnity, defend and hold AMS harmless from any and all liability, obligation, loss, damage, injury, penalty, action, judgment, suit, claim cost, expense or disbursement of any kind and nature, including without limitation attorney's fees and court costs, which may be imposed on, incurred by or served against AMS by any person or entity relating to, arising out of, or in connection with Consultant's performance of services under this Agreement including, but not limited to, claims for copying infringement; trademark infringement; patent infringement; violation of the Minnesota Trade Secrets Act; violation of confidentiality agreements; tortious interference with contract; unfair competition; misappropriation of rights; or any other claim relating to, arising out of or in connection with Consultant's performance of services hereunder.

(Trial Ex. P-1 ¶ 9(A).)

This language appears in the portion of the Consulting Agreement concerning the parties' mutual agreement to indemnify each other against claims made by third parties, as opposed to claims against each other.  The following paragraph, 9(B), sets forth Plaintiff's parallel duty to indemnify Defendants against third-party claims.  (*Id.* ¶ 9(B).)  Moreover, the final section of the indemnification provision, paragraph 9(C), describes the notification

process by which the party requesting indemnification, "the Indemnified Party," is to notify the party from whom it seeks indemnification, "the Indemnifying Party." (*Id*. ¶ 9(C).)  It states that the "Indemnifying Party may, at its option, control the defense of any claim for which it accepts indemnification," including the selection of counsel. (*Id*.)  This language makes clear that the indemnification provision is limited to indemnification arising from claims made by third parties.  It does not apply to litigation between the parties themselves, as it would make no sense for litigation opponents to control the other side's defense. Further, the Court agrees with Defendants that if Plaintiff had wanted the ability to recover costs and fees for a claim against Defendants, it could have negotiated a prevailing party's attorneys' fees provision, but it did not do so.  (Defs.' Opp'n at 4–5, n. 1.)  Accordingly, the Court finds that the Consulting Agreement does not provide for attorneys' fees and costs.

For all of the foregoing reasons, the Court respectfully denies Plaintiff's Motion for Attorneys' Fees and Costs.

### III.  CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

1. Plaintiff's Motion for Attorneys' Fees and Costs [Doc. No. 102] is **DENIED**.

2. Defendants' Motion for Judgment as a Matter of Law or in the Alternative for a New Trial [Doc. No. 108] is **DENIED**.

Dated: December 14, 2021                      s/Susan Richard Nelson
                                              SUSAN RICHARD NELSON
                                              United States District Judge